IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| The Estate of Reginald Randell Clay, Jr., Deceased, by and through Co-Special Administrators, Tara Henderson and Mykayla Craig,<br><br>      Plaintiffs,<br><br>    v.<br><br><br>The City of Chicago; and Fernando Ruiz, individually and in his official capacity as an officer for the Chicago Police Department,<br><br>      Defendants. | No. 23 C 2415 |

Memorandum Opinion and Order

Reginald Randell Clay, Jr., was shot and killed by Chicago Police Officer Fernando Ruiz on April 15, 2023. Plaintiffs Tara Henderson and Mykayla Craig were appointed Co-Special Administrators of his estate and brought this suit alleging wrongful death claims against Officer Ruiz pursuant to 42 U.S.C. § 1983 and Illinois state law. Plaintiffs also bring state-law claims for negligent training and supervision and indemnification, as well as a *Monell* claim under § 1983 against the City of Chicago. Defendants each move under Federal Rule of Civil Procedure 12(b)(6)

to dismiss the amended complaint for failure to state a claim. The motions are denied.

I.

According to the amended complaint, on April 15, 2023, Clay was planning to attend the funeral of a family friend. He was leaning over a vehicle, speaking with other individuals when Officer Ruiz and Officer Gabriel Bikoma--not a defendant in this suit--pulled up and exited their squad car. Clay backed away from the vehicle and began walking toward a nearby building's backyard. Even though there was nothing to suggest Clay was committing a crime, the officers began to chase him, and he ran away. They pursued him through backyards of nearby homes, which plaintiffs assert was in violation of the Chicago Police Department foot chase policy.

Plaintiffs allege Clay came to a dead end and turned to face Officer Ruiz, who had already drawn his gun. Clay removed a handgun from his waistband with his right hand, transferred the gun to his left hand, and, according to plaintiffs' allegations, began to place it on a nearby ledge in an attempt to surrender. The amended complaint goes on to say Officer Ruiz shot Clay several times as Clay raised his hands in the air. Clay, covered in blood, slumped to the ground. Life-saving measures were attempted three minutes after the shooting, but Clay died of his injuries.

These tragic events were allegedly the result of the Chicago Police Department's pattern and practice of stopping, frisking, and detaining young men of color on the basis of race, even when there is no reason to believe those men have committed any crime.

## II.

Officer Ruiz invites me to consider footage from the body-worn camera ("BWC") he wore on the day of Clay's death. Generally, on a Rule 12(b)(6) motion to dismiss, courts may not look beyond the allegations of the operative complaint without converting the motion to one for summary judgment. *See Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002). But where materials are attached to the complaint, or referenced in it and central to the allegations, those materials can be considered as well. *See Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013); *see also Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 691 (7th Cir. 2012) (observing "it makes eminently good sense" to apply the rule to video evidence); *Hyung Seok Koh v. Graf*, No. 11-cv-02605, 2013 WL 5348326, at *9-10 (N.D. Ill. Sept. 24, 2013) (considering video evidence in ruling on motion to dismiss). This incorporation-by-reference rule, however, applies only to material referred to in the complaint, and here there is no reference to the BWC footage. *See Robinson v. Crot*, No. 23 CV 14805, 2024 WL 1603485, at *2 (N.D. Ill. Apr. 12, 2024) (finding the incorporation-by-reference

doctrine "does not apply because the footage is not mentioned in [plaintiff's] complaint, even in passing." (citing cases)).

Officer Ruiz asserts that some courts have used the incorporation-by-reference rule even for evidence not mentioned in the complaint. But one of his cited cases in fact involved evidence referenced, albeit only in passing, in the complaint, *Hyung Seok Koh*, 2013 WL 5348326, at *9 ("[Defendant] contends that the Court may consider the video without converting its motion to a motion for summary judgment because the video is referred to by the [plaintiffs'] complaint."); First Am. Compl., *Hyung Seok Koh*, No. 11-cv-02605, ECF 40 ¶¶ 25, 36 (referencing "videotaped interrogations"), and in the other, the court acknowledged that the doctrine applies only "if the documents are referenced in the plaintiff's complaint" and then declined to review the video evidence for other reasons, *Ree v. City of Chicago*, No. 22 CV 4284, 2023 WL 3123761, at *4-5 (N.D. Ill. Apr. 27, 2023) (incorporation-by-reference doctrine applies only "if the documents are referenced in the plaintiff's complaint"). Accordingly, I will not apply that doctrine here.[1]

---

[1] Officer Ruiz requests in the alternative that I treat his motion as one for summary judgment. That request comes too late, however, appearing for the first time in his reply brief such that plaintiffs had no opportunity to respond. In any event, as explained below, the better course will be to allow for a short period of discovery to ensure plaintiffs have the chance to make out their case.

III.

Plaintiffs' first claim against Officer Ruiz is for wrongful death under § 1983, most appropriately reviewed as one for unlawful seizure and excessive force in violation of the Fourth Amendment. Starting with excessive force, whether there is a Fourth Amendment violation depends on "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (citing *Tennessee v. Garner*, 471 U.S. 1, 8–9 (1985)). Courts must be mindful "that police officers are often forced to make split-second judgments--in circumstances that are tense, uncertain, and rapidly evolving--about the amount of force that is necessary in a particular situation." *Id.* at 396–97. Even deadly force is justified if the suspect "puts another person (including a police officer) in imminent danger." *Taylor v. City of Milford*, 10 F.4th 800, 807 (7th Cir. 2021) (citations and internal quotation marks omitted); *see Garner*, 471 U.S. at 11 (deadly force justified if "the suspect poses a threat of serious physical harm, either to the officer or to others," and "if the suspect threatens the officer with a weapon").

Taking as true plaintiffs' allegation that Clay was moving to place his gun on a ledge at the moment Officer Ruiz shot him, it

5

is plausible that a reasonable officer would have understood Clay to be surrendering. In that case, the use of deadly force would not have been justified. Accordingly, this claim may proceed. For the same reasons, it is too early to determine whether Officer Ruiz is entitled to qualified immunity on this claim, especially because his argument relies substantially on facts from the BWC footage, which I am not considering for purposes of the motion to dismiss.

However, to the extent plaintiffs' § 1983 claim against Officer Ruiz is premised on Officer Ruiz's pursuit of Clay or on Officer Ruiz's violation of department policy, the claim may not proceed. The circumstances surrounding Officer Ruiz's approach and pursuit of Clay are immaterial because Clay was not seized until he was shot. The Supreme Court has squarely held that, even under a show of authority from a police officer, a fleeing suspect upon whom no physical force has been applied has not been "seized" within the meaning of the Fourth Amendment. *California v. Hodari D.*, 499 U.S. 621, 626 (1991). Thus, the seizure in this case did not occur until Officer Ruiz shot Clay. The amended complaint's allegations do not suggest otherwise.

Further, plaintiffs' claim that violation of the Chicago Police Department's foot pursuit policy either was, or contributed to, a Fourth Amendment violation fails. That is because "the violation of police regulations or even a state law is completely

6

immaterial as to the question of whether a violation of the federal constitution has been established." *Thompson v. City of Chicago*, 472 F.3d 444, 454 (7th Cir. 2006) (citation omitted).

That leaves plaintiffs' state-law wrongful death claim against Officer Ruiz and their claims against the City. As the City correctly argues, if the § 1983 claim against Officer Ruiz fails, the *Monell* claim against the City would fail as well, since an underlying constitutional violation is a prerequisite to a *Monell* claim. *See Johnson v. Prentice*, 29 F.4th 895, 905 (7th Cir. 2022) (finding *Monell* claim failed because "there is no proof of an underlying constitutional violation by any individual . . . defendant" (citation omitted)); *Nelson v. City of Chicago*, 992 F.3d 599, 607 (7th Cir. 2021) ("[T]he absence of an underlying constitutional violation by the [individual defendants] . . . automatically precludes a finding of *Monell* liability." (citation and internal quotation marks omitted)). And without the § 1983 claims, there would be no jurisdictional basis to maintain the state-law claims in federal court. In short, if the § 1983 claim against Officer Ruiz falls, so do the remaining claims.

Accordingly, in the interests of judicial economy and respect for the parties' time and resources, the parties shall engage for six months in discovery on the § 1983 claim against Officer Ruiz. At the close of discovery, defendants may file a motion for summary judgment. Until resolution of such motion, or in the event

7

defendants choose not to file that motion, discovery on all the other claims is stayed. Additionally, the City's entire motion to dismiss and Officer Ruiz's motion to dismiss the state-law wrongful death claim against him are denied without prejudice with leave to refile after resolution of any motion for summary judgment.

IV.

For the foregoing reasons, Officer Ruiz's motion to dismiss is denied. Plaintiffs may proceed on their § 1983 claim against him consistent with this opinion and have six months to conduct discovery on that claim, at which time defendants may file a motion for summary judgment. This denial is without prejudice as to the state-law wrongful death claim against Officer Ruiz. The City's motion to dismiss is denied without prejudice.

ENTER ORDER:

**Elaine E. Bucklo**
United States District Judge

Dated: September 16, 2024